JULIUS ROSENTHAL, Administrator, etc.,
*v.*
THOMAS T. RENICK *et al.*

1. EXECUTORS AND ADMINISTRATORS — *payment of debts — limitation of — circumstances control.* In determining the question, whether a creditor has waived his lien upon the property of an intestate, by failing to pursue his remedy within a reasonable time, in the absence of a legislative rule, each case must be left to depend largely upon its own circumstances.

2. SAME — *lapse of seven years — when a bar to such liens.* And in cases where the delay of the creditors is *unexplained,* and even where the title is still in the *heirs,* the period of seven years from the death of the intestate may be properly adopted, by analogies of the law, as a bar to such liens.

3. SAME — *a shorter limitation.* And in many cases a much shorter limitation may be applied, to protect innocent purchasers against the secret lien. The facts of each case must decide the limitation to be applied.

4. SAME — *lapse of seven years — when not a bar.* Where a person died in Ohio, having devised all of his real estate in Ohio, Indiana and Illinois, to R., first to pay all of his debts, and then to convey it to his son H., and subse-

quently such trustee and devisee died, the devisee H. leaving a will, and administrators with the will annexed were appointed in each of the States of Ohio and Illinois, — *held,* that the lien of a creditor upon the property of the testator was not barred by his failure to pursue his remedy within seven years after the death of the testator, it appearing that the property against which the lien was sought to be enforced, and of which the devisee H. died seized, had never been aliened by his devisee, nor any improvements made thereon *by him,* and that the estate was *still unsettled* in Ohio.

5. JUDGMENTS AND DECREES — *foreign judgments.* Where a judgment rendered by confession in the Court of Common Pleas, in the State of Ohio, was revived by *scire facias* in the same court, upon the following return of the officer upon the writ of *scire facias:* "June 3, 1853, served personally by copy. John Boyer, Sheriff,"— this court will presume such return to have been sufficient under the laws of that State to have authorized the order reviving such judgment.

6. SAME — *allowed as a claim against an estate by probate court.* A judgment rendered in the State of Ohio against the executor of an estate was allowed as a claim against the estate of the deceased in the County Court of Cook county. *Held,* that such allowance was only *prima facie* evidence of the justice of the demand against the estate.

7. SAME — *judgment against an administrator in one State no evidence of the indebtedness against the administrator of the same decedent in another.* And in such case, the claim having been founded upon a judgment to be paid in the State of Ohio, in due course of administration, its allowance by the County Court of Cook county was improper. A judgment against an administrator in our State, is no evidence of indebtedness against a different administrator of the same decedent in another State, for the purpose of affecting assets received by the latter under his trust.

8. ADMINISTRATION OF ESTATES — *rights of citizens of other States.* A citizen of another State, in which administration has been granted upon an estate, may come to this State and cause administration to be taken out here, a claim to be allowed, and real estate sold for its payment; and, in such case, it is not necessary to show that the personal estate in the other State has been exhausted.

APPEAL from the County Court of Cook county; the Hon. JAMES B. BRADWELL, Judge, presiding.

The opinion states the case.

Messrs. SCAMMON, McCAGG and FULLER, for the appellant.

Messrs. BONNEY & GRIGGS and J. E. FAY, for the appellees.

Mr. JUSTICE LAWRENCE delivered the opinion of the Court:

This was an application in the County Court of Cook county by Rosenthal, as administrator of Andrew Huston, deceased, for leave to sell real estate for the payment of debts.

Andrew Huston died in Pickaway county, Ohio, in the month of March, 1854. He devised all his real estate in Ohio, Indiana and Illinois, or elsewhere, to Jonathan Renick, to be disposed of by him for the payment of his debts, so far as might be necessary, and directed that the residue, after the payment of his debts, should go to his son, Renick Huston. Jonathan Renick took out letters testamentary in Ohio, in March, 1854, and died in September, 1862, when Thomas T. Renick was appointed in Ohio administrator *de bonis non*, with the will annexed, of said Andrew Huston.

The devisee, Renick Huston, died in February, 1864, leaving a will, and letters testamentary upon his estate were also issued to said Thomas T. Renick, who, with the devisees of said Renick Huston, is a defendant in this proceeding.

On the 15th of May, 1861, Julius Rosenthal, public administrator of Cook county, in this State, was appointed administrator of the estate of Andrew Huston, without reference to the will, and two claims were allowed against the estate — one in favor of Thomas Huston, for $6,346.09, and the other in favor of William Cassell, for $2,905.07. These claims were allowed in 1862. A petition was filed in the County Court of Cook county, for leave to sell land in payment of these debts, and on the 13th of September, 1862, the record of that court shows an order revoking the letters of administration, on the ground that Andrew Huston left a will, to which no reference had been had in granting the letters. On the 22d of January, 1863, Rosenthal was re-appointed administrator with the will annexed, the executor named in the will having departed this life. On the 26th of March, 1863, the claims of Cassell and Thomas Huston were again allowed, with the addition of the accrued interest. Another petition for the sale of real estate was filed on the 19th of September, 1863, which was amended in February, 1865, in order to make parties the devisees of Renick Huston, deceased. The petition was dismissed by the County Court, on the ground that the lien of the creditors had been lost by lapse of time.

An elaborate opinion of the learned judge who heard this

case in the County Court, has been embodied by counsel for appellees in their argument, and we concur in very much that is said by him upon this point, but we differ from him in the application of the law to the facts of the present case. If the real estate in Illinois, of which Andrew Huston died seized, had been aliened by his devisee for a valuable consideration before the filing of this petition, or even if money had been expended by the devisee himself in improving such real estate, we should have no hesitation in saying, that the lapse of more than seven years between the death of Andrew Huston and the filing of this petition, would be a sufficient reason for denying its prayer. In many cases a much shorter limitation might be properly applied to protect innocent purchasers against this secret lien, and even where the title is still in the heirs, the period of seven years may be properly adopted in analogy to our statutes of limitation relating to the lien of judgments, and, under certain circumstances, to the action of ejectment, if the delay of the creditors in causing the application to be made, is unexplained. *McCoy* v. *Morrow*, 18 Ill. 519.

But where the legislature has not thought proper to fix a definite and inflexible period of limitation, it does not become the courts to do so. While it may be said, generally, that this secret lien is entitled to no special favor, and courts should be intolerant of laches, because the lien is secret, yet, in the absence of a legislative rule, every case must be left to depend largely upon its own circumstances. As said by the Supreme Court of New Jersey in *Sidell* v. *McVickar*, 6 Halst. 56, "Reflection and experience both teach the extreme difficulty of prescribing any fixed rule which would in general operate safely and justly. The lesson is more impressively taught by the very wide conclusions to which enlightened courts have been led. The time, reasonable according to the situation of one estate, would in another be very unreasonable."

Now, in the case before us, it is not claimed, that the lands have ever been sold, or that the devisee of Andrew Huston has ever expended any money in improvements, in the belief that the lands were his, which he would lose by subjecting them to

the payment of the debts.   It appears, also, that the estate is still unsettled in Ohio, and creditors may have been deterred from resorting to these lands, by the hope of receiving payment from the Ohio administrator.   It is not sought to impeach the good faith of these proceedings.   This is clearly what it appears to be upon its face, an honest attempt to secure payment of debts from the property of the man who owed them, and not a scheme for securing the title of valuable real estate, by seeking and finding some evidence of a debt long since forgotten, against some person long since dead, whose estate has been settled in the place of his domicile, and bringing the evidence of such indebtedness here, with the view of wresting a title from the heirs of the deceased person or their grantees.   Cases of this sort sometimes arise, and are entitled at the hands of the courts only to the strictest law.

The delay, then, in the present case is explained, without imputing laches, by the fact that the estate is still unsettled in Ohio.   Neither Renick Huston, the devisee of Andrew, could have complained of hardship in his life-time, nor can his devisees, the present defendants; since, so far as appears, they have expended no money on this real estate.   It is only sought to apply it as natural justice would require, there being no countervailing equities in the way.   Not only that, but these defendants claim under the will of Andrew Huston, and that will expressly directed his real estate in Illinois to be sold for payment of his debts, and that Renick Huston should take only after the payment of his debts.   This, it is true, is not a proceeding to enforce the trusts of that will, nor has the County Court the power for such a purpose; but we may well recur to this provision of the will as showing, in reference to the claims of the defendants, that Andrew Huston intended his devisees should derive nothing from his bounty, until his creditors had received their dues; and, to accomplish this, he devised his property to a trustee, first to pay his debts, and then to convey to his ulterior devisee.   Under these circumstances, we think this proceeding is not barred by the lapse of time, so far as appears on the present record.

We must now consider the nature of the two claims allowed. The claim in favor of Cassell was founded on a judgment rendered by confession in the Court of Common Pleas of Pickaway county, Ohio, on the 1st of June, 1847, and revived by *scire facias* in the same court on the 28th of February, 1854. It is objected that the service of the *sci. fa.* was defective. The record shows the following return of the officer: " June 3, 1853, served personally by copy. John Boyer, Sheriff." On this return the Court of Common Pleas entered an order reviving the judgment, and we must presume the return to have been sufficient under the laws of that State. This claim was properly allowed, and real estate should be sold for its payment.

The claim in favor of Thomas Huston was founded on a judgment rendered in 1860, in the Court of Common Pleas in Pickaway county, Ohio, against the executor of Andrew Huston. This claim has been allowed in the County Court of Cook county, but that makes it only *prima facie* evidence against the heirs, in a proceeding of this character, as decided by this court in *Stone* v. *Wood*, 16 Ill. 177; *Hopkins* v. *McCann*, 19 id. 113, and *Moline Co.* v. *Webster*, 26 id. 234. As this claim was founded solely on a judgment rendered in Ohio, against the executor in that State, and to be paid there, in the language of the judgment, in due course of administration, it was improperly allowed by the County Court of Cook county. A judgment against an administrator in one State is no evidence of indebtedness against another administrator of the same decedent in another State, for the purpose of affecting assets received by the latter under his administration. The administrators are not regarded as in privity with each other. Story's Conflict of Laws, § 522.

So far, then, as this claim of Thomas Huston was concerned, the application for leave to sell was properly denied.

It is suggested by counsel for the appellees that a citizen of another State in which administration has been granted, cannot come here and cause administration to be taken out, a claim to be allowed and real estate sold for its payment. But this has always been the practice, so far as our experience and

observation go, and we see no objection to it. There is nothing in our statute indicating an intention to confine this right to citizens of this State.

Neither do we deem it necessary to show that the personal property in the State of Ohio is exhausted. The Illinois administrator has nothing to do with the assets in that State.

We have disposed of all the questions in this record which we deem it necessary to notice, and reverse the order dismissing the bill, and remand the case for further proceedings in accordance with this opinion.

*Judgment reversed.*