84 249<br>s184s574

## Jewell Belting Co. v. Rogers, Brown & Meacham, in the Matter of Assignment of the Todd Pulley & Shafting Works.

1. CORPORATIONS—*Actions of Directors in Giving Joint Notes Not Ultra Vires.*—The action of the stockholders of a corporation in making joint notes with another corporation for an indebtedness in which both corporations are jointly interested, and which was incurred for goods received by both corporations, is not an act *ultra vires.*

2. CONSIDERATION—*Extension of Time.*—An extension of the time of payment of a sum of money due, is a sufficient consideration for the execution of a promissory note for the amount.

3. VOLUNTARY ASSIGNMENTS—*Practice in the County Courts.*—Proceedings in the County Courts in cases of voluntary assignments are, in the nature of proceedings in chancery, regulated by statute.

Proceedings in Voluntary Assignment.—Appeal from the County Court of St. Clair County; the Hon. FRANK PERRIN, Judge, presiding. Heard in this court at the February term, 1899. Reversed and remanded with directions. Opinion filed September 5, 1899.

Statement.—The Todd Pulley & Shafting Works, on the 19th day of April, A. D. 1898, made an assignment to George F. McNulty, assignee. On the second day of May, A. D. 1898, the assignee filed his inventory, showing assets designated as good, to the amount of $17,408.67, doubtful book accounts, $8,968.57, and chattel property, under chattel mortgage, amounting to $4,480. Upon due notice for

the filing of claims, the claim of the Jewell Belting Company, in the sum of $11,564.91, and that of Rogers, Brown & Meacham, in the sum of $8,290.93, with other claims, were filed. The claim of the Jewell Belting Company was represented by six notes, each for the sum of $1,861.87, due respectively two, four, six, eight, ten and twelve months after date May 17, 1898, with interest at six per cent, and signed by Todds & Stanley Mill Furnishing Co., per Chas. A. Todd, Treas., and Todd Pulley & Shafting Works, per H. Stanley, Pres. To the claim of the Jewell Belting Co. Rogers, Brown & Meacham filed the following objections, which were sustained by the court, and an appeal taken from that decision:

1. Each of the said notes purporting to be signed by the Todd Pulley & Shafting Works, per H. Stanley, Pres., were executed and signed by him without authority from the said Todd Pulley & Shafting Works.

2. The said notes were executed by said Todd Pulley & Shafting Works, if executed at all, not as principal maker, but as surety, and the Todd Pulley & Shafting Works had no authority to sign said notes as surety.

3. There was no consideration moving to the said Todd Pulley & Shafting Works, for the execution of the said notes, or either of them, but the same were executed merely as accommodation to the Todds & Stanley Mill Furnishing Company, as principal thereof, and the said Todd Pulley & Shafting Works had no power or authority, under its charter or otherwise, to make the said notes for that purpose; and the objectors aver that the said Jewell Belting Company, at the time it received the said notes, knew the facts before stated.

4. The said notes were given for goods, wares and merchandise furnished by the Jewell Belting Company to the Todds & Stanley Mill Furnishing Company, and there was no consideration for their execution by the said Todd Pulley & Shafting Works.

The Todd Pulley & Shafting Works was incorporated under the laws of Illinois, and under its charter had power

to manufacture and deal in iron and other castings and tools, to build machinery and to sell machinery on commission, and to carry on the business of a foundry in all its departments.

The Todds & Stanley Mill Furnishing Company was a Missouri corporation, and had power to deal in and buy and sell, as agents or factors, all kinds of machinery and mill supplies, to manufacture and sell castings, etc. Prior to March 17, 1898, the Jewell Belting Company shipped to the Todds & Stanley Mill Furnishing Company leather belting to the amount of about twelve thousand dollars ($12,000). We think the evidence shows this to have been a consignment to the company as a factor, or agent, and not a sale.

A part of the belting so consigned by the Jewell Belting Company to the Todds & Stanley Mill Furnishing Co. was used by the Todd Pulley & Shafting Works, upon its machinery, at its factory in East St. Louis, and part of it seems to have been used by the Todd Pulley & Shafting Works to fill orders which that corporation received from its customers for leather belting. The remainder of these consigned goods were sold by the Todds & Stanley Mill Furnishing Company, but the proceeds realized by it from their sale were not remitted to the Jewell Belting Company. Some of the proceeds were used in running the Mill Furnishing Company and some in running the Pulley & Shafting Company.

In March, 1898, the secretary of the Jewell Belting Company came to St. Louis, and was informed by Stanley, president of both corporations, that about $12,000 of its consigned goods had been sold by the Todds & Stanley Mill Furnishing Company, and that the proceeds had been used for the pay rolls and expenses of the two companies. Thereupon the secretary of the Jewell Belting Company requested that the two companies should execute their joint notes to the Jewell Belting Company for the belting. A meeting of the stockholders of the Todd Pulley & Shafting Works was then called, on the 17th day of March, 1898, at which all of the stock of the company was represented,

and the stockholders then unanimously adopted a resolution authorizing the execution of these six notes. The indebtedness to the Jewell Company was then due, but the secretary of the company agreed to extend the time for paying said indebtedness by taking six notes therefor, one maturing every two months. Thereupon the said notes were drawn up and executed by the two corporations and delivered to the Jewell Belting Company. At this time both corporations were in a solvent condition, and said notes were executed in good faith.

The stockholders in these two corporations were the same persons, to wit: Henry Stanley, Charles Todd, E. C. Teuscher, George Todd and Mrs. Washington Todd. Henry Stanley was president of both corporations. E. C. Teuscher was vice-president and secretary of both, and Charles Todd was treasurer of both. They used the same office in Missouri, and the plant or factory in Illinois was owned jointly by the two corporations, but the books were so kept that each company could designate its own property.

FREDERICK N. JUDSON and JOHN F. GREEN, attorneys for appellant.

CHARLES W. THOMAS, attorney for appellees.

MR. PRESIDING JUSTICE WORTHINGTON delivered the opinion of the court.

In addition to the exhibits, all the evidence in this case is the testimony of Charles A. Todd, treasurer of both corporations; Henry Stanley, president of both, and Emile C. Teuscher, vice-president and secretary of both. Henry Stanley testified, as abstracted:

"The claim of the Jewell Belting Company originated with a consignment of goods by the Jewell Belting Company to the Todds & Stanley Mill Furnishing Company; that the Todds & Stanley Mill Furnishing Company got behind with the Jewell Belting Company and used the money realized from the sale of the goods in both concerns,

as they were both intimately connected; that the goods consisted of leather belting, and were sent to the Todds & Stanley Mill Furnishing Company, to be sold by that company, for the account of the Jewell Belting Company. The goods were sold to their customers, and the money was collected and used for the necessities of the two concerns; that is, the Todd-Stanley Company and the Todd Pulley & Shafting Works. The goods were consigned by the Jewell Belting Company to the Todds & Stanley Mill Furnishing Company, to be sold by that company on commission, and they were so sold to various parties, and with the money that arose from the sale of these goods, both the corporations were run, some of the money that arose from the sale of these goods being used for the purpose of operating the Todd Pulley & Shafting Works, and some for the purpose of operating the Todds & Stanley Mill Furnishing Company; that a part of the leather belting so sent by the Jewell Belting Company was used by the Todd Pulley & Shafting Works upon their own machinery, the belting being conveyed by the Todds & Stanley Mill Furnishing Company to the Todd Pulley & Shafting Works." * * * "That under the contract between the Jewell Belting Company and the Todds & Stanley Mill Furnishing Company, the Todds & Stanley Mill Furnishing Company was to account to the Jewell Belting Company for all goods sold under the contract; but the Todd Pulley & Shafting Works also signed these notes because it received a part of the money for which the Jewell Belting Company's goods were sold ; that he could not tell exactly how much of the money the Todd Pulley & Shafting Works received, but it got a good deal of it; that the two concerns were practically run as one; one company would get paper discounted, and, with the money so received, the liabilities of both companies would be paid ; and whenever one company had money and the other had none, the money on hand would be used for both companies; that he could not tell just how much of the money received by the Todds & Stanley Mill Furnishing Company from sales of the Jewell Company's goods was so used by the Todd Pulley & Shafting Works; he could only guess at it; but from the general idea he had of it, he thought the money was used about half and half for each company."

The witness further testified that he could not tell the exact condition of the accounts between the two companies; that the books might show it, but that it was a complicated

account. Upon cross-examination he stated "that the reason he could not individualize the money was because the two corporations were run practically as one whenever their mutual interest required it; that they had the same stockholders and the same officers; that at the time these notes were executed there was no apprehension of the insolvency of either corporation; both expected to go on and do business, and whatever was done was done in good faith."

Emile C. Teuscher testified "that the two concerns were practically one, but their corporate capacities were separate."

The following is a copy of the resolution of the stockholders authorizing the making of the notes in evidence, and was drawn by Mr. Watts, acting as attorney for both companies:

"SPECIAL STOCKHOLDERS' MEETING No. 14.
Office of the TODD PULLEY & SHAFTING WORKS.
EAST ST. LOUIS, ILL., March 17, 1898.
"At a stockholders' meeting of this company, this day held, at which all of the stock of the company was legally represented, it was unanimously agreed, after motion duly made and seconded, and voted upon, that this corporation should make joint notes with the Todds & Stanley Mill F. Co., of St. Louis, Mo., in favor of the Jewell Belting Company, of Hartford, Connecticut, to the amount of twelve thousand dollars or less. The reason of this action by the stockholders of the company is the fact that the stockholders in the above mentioned two corporations are jointly interested, and that this corporation has received a part of the goods and benefits for which these notes were given. Adjournment. There being no further business, the meeting, on motion, adjourned.

EMILE C. TEUSCHER, Sec."

When the notes to the Jewell Company were given the indebtedness was due, and by the acceptance of these notes the time of payment was extended for two, four, six, eight, ten and twelve months, according to the terms of the notes respectively. Part of the belting was delivered by the Furnishing Company directly to the Pulley Company, and used by it, and the proceeds of the sale of the remainder shared by both companies. The intimate relations of both com-

panies, as shown by the evidence, practically made an extension of time for payment to one company an extension to the other. Both shared, as the evidence appears, in the benefits derived from the belting furnished by the Jewell Company to the Furnishing Company to be sold on commission. Both companies, through their officers being the same, knew on what terms and conditions this belting was consigned. Treating both corporations as separate and distinct, so far as the record discloses, the Todd Pulley & Shafting Company owed the Todds & Stanley Mill Furnishing Company for so much of the belting as it had used or disposed of, and the account was due. By the execution of these notes, it secured an extension of time to the extent of this indebtedness, at least, which extension was a valid consideration on its part for the execution of the notes. Harris v. Harris, 180 Ill. 157.

Under all the facts in the case, we think the action of the stockholders, at their meeting March 17, 1898, cited *supra*, was not *ultra vires*, and that there was valid consideration for the notes moving to both corporations as signers.

The objection, that this proceeding is in the nature of an action at law, and no propositions of law having been submitted, and no exceptions taken to the introduction of testimony or to the finding of the court, is not well taken.

The proceedings in the County Court in cases of voluntary assignment are in the nature of proceedings in chancery, regulated by statute in the County Court. Union Trust Co. v. Trumbull, 137 Ill. 146; Farwell v. Patterson, 76 Ill. App. 601.

Judgment reversed and case remanded, with directions to allow claim.