### Edwin F. Bayley et al., Trustees, v. Frederick W. Clark et al., Appellees.
### On the Appeal of John C. Fetzer, Appellant.

### Gen. No. 16,143.

1. PARTIES—*who not entitled to appear.* Where a person is not a party to a cause he has no right to come into the same in any manner save by the express permission of the court evidenced by an order of record. If such a person file a petition in a pending cause it may properly be stricken from the files by the chancellor of his own motion or by the chancellor upon the motion of any party to the cause so invaded with such alien documents.

2. PARTIES—*who not entitled to become.* If a petition tendered or filed shows no interest personal to the petitioner in the subject-matter of the litigation it is properly stricken from the files.

3. INTERPLEADERS—*who not entitled to intervene.* A party entirely naked of any interest or claim in the subject-matter of pending chancery litigation has no right to intervene therein.

4. APPEALS AND ERRORS—*when granting of prayer for appeal improper.* A party who has sought to intrude himself into litigation and who has no interest or direct claim of interest in the subject-matter thereof, has no right to appeal from an order striking his pleadings or pretended pleadings from the files, and an order granting a right of appeal is erroneous and the perfected appeal will be dismissed.

5. TRUSTS—*who cannot compel performance of obligations.* A person without interest in the subject-matter of pending litigation and without interest in the subject-matter of a trust, has no standing to compel the trustees of such trust involved in such litigation, to perform what are or are claimed to be the obligations of such trust.

Intervening petition. Appeal from the Circuit Court of Cook county; the Hon. JULIAN W. MACK, Judge, presiding. Heard in this court at the October term, 1909. Dismissed. Opinion filed March 1, 1910.

ELBRIDGE HANECY, for appellant and of counsel.

WILSON, MOORE & MCILVAINE, for certain appellees.

MR. PRESIDING JUSTICE HOLDOM delivered the opinion of the court.

All the appellees join in a motion to dismiss the appeal in this case, and in the succeeding case general number 16144. (Post, p. 168.) As both cases are identical, except as to some formal parties, and all the interests involved are substantially the same in each and the reasons for the disposition of one are equally cogent in the determination of the other, this opinion must be regarded as stating both cases and the reasons for our conclusion in each.

Jonathan Clark in his lifetime obtained three long time leases from the respective fee owners of real estate on State street, each being for 40 feet and combined making a frontage on State street of 120 feet, adjoining on the south the Leiter building situate on the southeast corner of State street and Jackson boulevard, Chicago. The total ground rent payable under these three leases is $9,000 per annum, plus all municipal and other taxes chargeable against the land during the term. The rental thus fixed continues during the whole term. Jonathan Clark died testate February 5, 1902. Much litigation was projected by some of the heirs at law in an endeavor to nullify the testamentary disposition made by Clark of his property. The interested parties however finally arranged a settlement of their differences, the will and codicil of Clark were established and Hill added as one of the trustees under the will with Bayley and Clark in the place of a third person who retired. The north 80 feet of said 120 feet are part of the trust estate vested in Bayley, Clark and Hill as trustees. The south 40 feet was in the litigation above mentioned in Alice Clark, the widow of Jonathan Clark, she having renounced the provisions made for her in her husband's will. Thereafter

Alice Clark conveyed that 40 feet and all her interest in her husband's estate to Frederick W. Clark and her remaining living children on certain trusts in such conveyance set out, and her action in that regard was ratified by decree. The *corpus* of the Jonathan Clark estate and such accretions thereto which may under the terms of the trust created by the testator and the decree of settlement become a part of such *corpus,* is not to be distributed until the youngest of his surviving children has been dead twenty years, and then distributed between the grandchildren who may then be in life and the descendants of such of them as may then be dead *per stirpes.*

Jonathan Clark in his lifetime executed a lease of the whole 120 feet to Rothschild & Company for a term of 15 years and 2 months, ending April 11, 1911, under which Rothschild & Company are now in possession.

The two bills in which Fetzer is striving to intervene were brought respectively by the trustees of the Jonathan Clark trust and the trustees of the Alice Clark trust against all persons in interest, to settle the authority of the trustees to conclude an arrangement with Rothschild & Company for a sub-lease of said 120 feet for substantially the remaining term of the original three leases. All parties *sui juris* had agreed upon terms and favored the consummation of the tentative agreement. To settle doubts arising as to the authority of the trustees to make such proposed leases under the Clark will, the opinion and, if necessary, the authority of the chancery court was sought. There were minors interested and they were made parties to the suits and were within the jurisdiction of the court and properly represented. The estate of Jonathan Clark could not command the means with which to improve the leasehold property with necessary modern improvements to make the same remunerative. It was therefore deemed best to make leases to Rothschild & Company, the present tenants, at what was agreed by all the parties interested to be a fair

rental.  That rental is $84,000 a year plus every charge saving only the original $9,000 ground rent, thereby netting the two sets of trustees $75,000 annually.  In addition to such rentals Rothschild & Company agree to erect a ten story modernly constructed building covering the whole of the leasehold premises, which when erected shall stand as security for the rental charge. These bills were filed February 5, 1909, and issues joined thereon by appropriate answers and replications thereto being filed by March 22, 1909, and on the following day the default of several non-answering defendants, upon whom process of summons had been duly served, was entered.  The causes then stood for hearing and such hearing was entered upon March 30, 1909, and continued with several adjournments intervening until May 4, 1909.

On May 15, 1909, appellant, John C. Fetzer, without applying for or obtaining leave of court so to do, filed in each of said causes his affidavit, setting forth a desire to become the lessee in the place and stead of Rothschild & Company and offering an advanced annual rental of $4,000 for each 40 feet, making together a total advance of $12,000 of annual rent for the whole 120 feet over the rental expected from Rothschild & Company; that on May 4, 1909, he had made such offer in writing to the trustees of the Jonathan and Alice Clark trusts; that he did not succeed in interesting either them or any of the attorneys for the parties or the guardians of the minors; that they all seemed fixed in the purpose of carrying out the offer made by Rothschild & Company and the tentative arrangement entered into in faith of such offer; that the rental value of the 120 feet is much more than the rental offered by Rothschild & Company and of the value offered by him; that "the whole situation seems to be that in the suit brought by the Alice Clark trustees, as also in the suit brought by the trustees of the estate of Jonathan Clark, there is a present existing understanding and effort made by all concerned to carry out the Rothschild & Company sale without

reference to the value of said property, or whether more money or better terms can be obtained than as presented to this court in this proceeding for its authorization and approval."

On May 26, 1909, Fetzer, without any application to the court for leave so to do, filed in each of said causes an intervening petition, in which is reiterated the matters and charges set out in his affidavits and considerable of the history connected with the Jonathan Clark leases, his will and the litigation which followed its probate, renews the offer for leases made in his affidavits and tendered to the trustees, and avers that it is not for the best interests of the parties, and particularly the minor beneficiaries, who are the wards of the court, that the court sanction the arrangement made with Rothschild & Company by the trustees with the approval of the adults *cestui que trustants*. He charges that the trustees have conspired and confederated with Rothschild & Company to sell the leaseholds to them for less than their market value and to that end have kept the negotiations and dealings secret for the avowed purpose of preventing others from bidding for or becoming interested in such leases. He also charges misconduct on the part of one of the attorneys representing the trustees and the minors, and particularly that such attorney is in fact working for and in the employ of Rothschild & Company. He asks the court to refuse its assent to the Rothschild & Company arrangement and to award the leases to him upon his bid, etc. He prays that he may be allowed to intervene and participate in all proceedings to be had before the court. Fetzer further asks that his petitions be treated "as a petition, or as an intervening petition or as an answer and cross-bill in said cases, or as an original bill," and prays for summons against Rothschild & Company and for an injunction against all parties to restrain them from carrying out the arrangements made with Rothschild & Company.

Before deciding appellees' motion to strike the affi-

davit and intervening petition of Fetzer from the files, the court proceeded upon the theory that these documents were in the nature of an application to intervene in the cause, and treated Fetzer as *amicus curiæ* and proceeded to make a thorough investigation as to the verity of the charges made, more particularly upon the question of whether the parties were practicing a deception upon the court and acting inequitably. Fetzer was given a free hand in presenting his case and was allowed every latitude. A large amount of evidence was adduced and none proffered in behalf of Fetzer was excluded. A patient hearing was accorded and every point made carefully and laboriously considered by the chancellor. The record thus made is of considerable magnitude, and while much of it is irrevelant to the question presented for our decision, we have examined with care all the matter interpolated into the record and found in the abstract notwithstanding most of it is not covered by the certificate of evidence and is therefore not legally entitled to our review.

In the order appealed from the chancellor found that said Fetzer had no interest whatever in the subject-matter involved in the bill of complaint in which said intervening petition was filed, or in the relief sought thereby or in the property described in the bill, and that said Fetzer is not a proper party to the proceeding, and that the petition and affidavit were filed without leave or permission of the court, and ordered that the intervening petition filed by Fetzer be stricken from the files and that the prayer of Fetzer to be allowed to intervene and become a party to said cause be denied. "And it further appearing to the Court that on May 15, 1909, without leave of court said John C. Fetzer caused to be filed among the papers of this cause an affidavit signed and sworn to by him, and the complainants having moved the court to strike the said affidavit from the files, the court doth now order and direct that the

said affidavit be and it is hereby stricken from the files of this court.''

From the foregoing order, against the objection and protest of appellees, Fetzer was allowed an appeal to this court. At the same time the chancellor entered an order upon investigation of the charges of fraud treated as made by Fetzer as *amicus curiæ,* wherein, among other things, appear the following recitations and findings:

''And the court having heard all the evidence produced by the said Fetzer, or in his behalf in support of said charges, and the evidence of the said Fetzer when called as a witness, and the said evidence of said Arthur B. Wright, also certain affidavits and other evidence produced by the complainants in said cause, and having heard the counsel for said Fetzer, and also counsel for the parties to the said cause in argument to the full extent that they desired to be heard, respectively, said hearing consuming a large portion of the day of each of the days following: May 31st, June 15th, June 16th, June 18th and June 21st, and having become fully informed concerning the merits of the said charges, now finds and adjudges in respect thereto as follows:

''The evidence introduced on said hearing has wholly failed to show that the said charges or any of them are true, either in fact or in substance; but, on the contrary, the court finds from the evidence taken on said investigation that there is no proof, nor shadow of proof, of any fraud or wrongdoing, or of any disregard of the rights of their beneficiaries because of the action of the trustees in negotiating the leases referred to in said affidavit and petition, or because of the action of the trustees in causing proceedings to be brought to ratify the said transaction, if it should be deemed necessary in negotiating the said leases; that there is not the shadow of proof that the said trustees did not believe that the said leases were in every respect proper and to the interest of their beneficiaries or that they were not acting in complete good faith and as careful business men at the time they entered into negotiations with said Rothschild & Company; nor any shadow of proof that they did not

believe the said negotiations were in the interest of the beneficiaries of said trust at the time they entered into such negotiations, or at the time they caused the bill to be filed, or at the present time.

"The court expressly finds, as an affirmative fact, from the evidence taken on said investigations, that the said trustees in all respects exercised complete good faith in respect to all and singular the matters mentioned in the said petition of said Fetzer, and due diligence in the interest and for the benefit of their said trusts and the parties interested therein; and that there is not the shadow of proof that the said trustees have in any way whatever conspired, connived or confederated with the said Rothschild & Company or any other person or persons, to sell leasehold estates at less than the market value thereof, or to keep secret the fact that said Rothschild & Company had bid thereon.

"And the court further finds from the evidence on said investigation that it is not true that any agreed case was made up, or ever had been made up, for this court to pass upon which was in any way collusive or in fraud of the wards of the court or any other person whomsoever.

"And the court finds from the evidence that it is not true that the trustees of said estate were trying, or have ever tried, to induce this court to aid in carrying out a secret contract made by the said trustees and said Rothschild & Company; or that the arrangements of said trustees made in fact with said Rothschild & Company, the approval of which was asked of the court, was in any way detrimental or injurious to said trust estate, or to the minors, or other persons interested therein, but the court specifically finds the contrary to be true."

The court also in this order exonerated Arthur N. Cox from all charges of improper conduct made by Fetzer. From the latter order Fetzer prayed an appeal to this court, which was denied. The questions, therefore, calling for our decision on this motion are:

1st. Did Fetzer have the right to file, of his own

volition, the affidavit and intervening petition which the court struck from the files?

2nd. Has Fetzer any right to intervene, or any interest which entitles him in any form to become a party to appellees' bills?

3rd. Is the order appealable?

And incidentally has Fetzer as *amicus curiæ* any right to further meddle in the litigation either in the trial court or here on appeal to review the chancellor's determination on the hearing accorded?

First. It is unquestionably the law that no person can of his own volition intrude himself into an action either on the law or equity side of the court. This is so, regardless of the fact that he may ultimately demonstrate that he has such an interest in the litigation or its subject-matter as to permit him, on craving leave, to become a party on either side of the cause, or to intervene by petition to establish such interest. But where he is not a party to the cause, he has no right to come into the cause in any manner save by the express permission of the court, evidenced by an order of record. Certainly until such authority is procured it is violative of every known precedent and principle of procedure to place upon the files of a cause either an appearance, affidavit or pleadings of any kind. Moreover counsel for appellant do not seriously contend to the contrary. Therefore the affidavit and petition of Fetzer having been filed by him without leave of the court so to do first being obtained, the chancellor was fully justified, aside from any other consideration, in striking them from the files, either without being moved to do so or upon the motion of any party to the cause so invaded with such alien documents.

Second. Fetzer makes no claim of interest in the subject-matter of the litigation or in any of the parties to it. By no ruling or action of the court, primary, intermediary or final, can he be affected in the slightest degree. By no fact stated in his affidavit or averment found in his petition does he disclose any,

interest personal to himself in the leaseholds the subject-matter of the litigation between the parties to such litigation. Nor is there any pretense on his part that he has any interest of any kind. The position of Fetzer would seem, from the averments of his petition, when analyzed, to be that the rentals contemplated to be paid by Rothschild & Company under a tentative agreement made with the owners of the senior leasehold estate, are less than the market rate and not as much as can be procured from others, or that Fetzer is willing to offer, and that therefore he should be afforded, by the court, in this proceeding, an opportunity to gratify his wishes by diverting the course of the litigation desired by the parties and to stop the carrying out of the agreement contemplated with Rothschild & Company, and to have the court offer the property generally to the public by soliciting bids or at public sale; that Fetzer shall, by his counsel, be permitted to divert all existing arrangements from the orderly and satisfactory manner arranged by the parties in interest and to adopt a course in harmony with the desires and wishes of Fetzer and incidentally for his profit. However sincere and morally ethical Fetzer's intentions may be, in his endeavor to force himself into this litigation, which is none of his concern, we regard it as untenable to set such a precedent, unheard of in the annals of judicial procedure and which would be subversive of the inherent right of every individual to manage his own affairs in his own way and without the interference of strangers. Were the law otherwise, who would be free in his property right and business affairs from the intermeddler, wise or otherwise, who might insist, as in this case, in assuming to direct what he might regard as the better method of disposing of another's property, however objectionable such method might be to the one vitally interested as owner? Surely no one can be in earnest in attempting to pursue such a course. But counsel urge that because Fetzer is willing to pay more for the leaseholds or procure third parties to pay more

therefor than the owners are willing to accept from Rothschild & Company, that fact gives Fetzer a standing in the litigation by becoming a party to it, although in just what way did not seem so very plain to either Fetzer or his counsel when the attempt was made to intervene. This is evident from the petition, which prays that it may be regarded as "a petition, or as an intervening petition, or as an answer or cross-bill in said cause, or as an original bill." This prayer amply foreshadows the dire straits which the learned counsel must have realized confronted him when he sought to get into this litigation upon the averments of such a pleading.

We have carefully examined the brief of appellant's counsel filed in opposition to the motion to dismiss, as well as the brief filed in support of the errors assigned for a reversal of the order of dismissal by the Circuit Court, also the authorities cited. However we fail to discover among the cases cited one analogous to the case before us either on fact or principle. In no case cited was the party intervening naked of any interest or claim. Wherever the court entertained jurisdiction, the moving reason was a substantial interest of the person who sought the protection of the court for such interest. What has the reasoning of the court in Blake v. Blake, 80 Ill. 523, when it said: "It is apprehended there can be no decree against a party that will work a deprivation of his property or liberty, from which no appeal or writ of error will lie" to do with this case? Such principle, although abstract, states the law; but to make it concrete and operative in any other case it must be applied to the facts of such other case. It certainly has no pertinency to the facts found here. Fetzer has neither property nor liberty at stake in this litigation nothing of which the court could deprive him.

There is no collateral controversy settled here, as in Association v. Smith, 169 Ill. 264. Fetzer has no interest in the controversy whatever, collateral or otherwise. Gumbel v. Pitkin, 113 U. S. 545, has no

bearing. Gumbel had rights. Fetzer has none. Carsamajor v. Strode, 1 Sim. & Stu. 381; Anderson v. Foulke, Har. & G. 346; Delaplane v. Lawrence, 10 Page 604; Blossom v. Milwaukee etc. Ry. Co., 1 Wallace 615, and numerous other cases cited in appellant's briefs arose in foreclosure proceedings, where the persons asking the aid of the court had become interested in the subject-matter of the suit as bidders at a sale under a decree, or where such person had been brought into the cause to compel him to carry out a contract made in virtue of the court's decree. Fetzer has made no bid or offer under any decree or order of the court. He is asking the court to let him bid and thereby become interested. If the court had heeded his request, which it might in certain circumstances have done, and a question should be raised in relation to such bid, or flowing from the action of the court in dealing with him in an attempt to enforce a compliance with such bid, then there would be a right to appeal.

In Derrick v. Lamar Ins. Co., 74 Ill. 404, the court did not limit the right to an appeal to one who was a party "provided he has an interest in the question which may be affected by the decree or order appealed from."

Quigley v. Breckenridge, 180 Ill. 627, was the case of a bidder at a partition sale, who had been given leave to defend in the court below and thereby became a party to the suit and was therefore entitled to appeal. Fetzer is not and never has been a party to the original cause. In all the cases cited, both in American and British courts, wherever the right to appeal has been accorded, such right has been predicated on the party having an interest in the litigation or the property involved in the cause.

Assuming, contrary to the fact, that the intervening petition and affidavit of Fetzer were lawfully before the court for its consideration and judgment, still as they failed to disclose any interest or right in Fetzer to obtrude himself into the cause, the action of the

chancellor in striking them from the files was the only course open. No other disposition of the matter could have been sustained. Rosenberg v. Stern, 177 Ill. 437; Wightman v. Yaryan, 217 *ib*. 371. In the Wightman case *supra* the Supreme Court held that the interest entitling a person to intervene in an equity cause must be created by a claim or lien upon the property, or some part of it, in suit, of such an immediate character that the intervenor will gain or lose by the direct operation of the decree. As Fetzer can neither gain nor lose anything by any decree entered in the court below, the fundamental principle conferring the right to intervene is, under the Wightman case, lacking, so that the right to intervene does not exist. To the like effect is Day v. Bullen, 127 Ill. App. 155.

Third. As Fetzer has no interest in the litigation or the subject of it, as we have heretofore indicated, he certainly has no right to appeal. People ex rel. Dunham v. McCormick, 201 Ill. 310; Strong v. Peters, 212 *ib*. 282. Where an appeal is prosecuted or writ of error sued out by one having no interest in the litigation and therefore no right to a review of the trial court's judgment or decree, a motion to dismiss in this court was held to be a proper course of procedure, and this court's action in dismissing a writ of error sued out by a stranger was upheld in Scott v. Great Western Coal Co., 223 Ill. 271. Such is the trend of authority in many other cases.

Fetzer had no right to appeal, and the order allowing the appeal was erroneous. The motion to dismiss is a proper method to dispose of this appeal, for as appellant had no standing in the litigation in the Circuit Court, none was conferred by erroneously granting an appeal which this court has no right to entertain.

The other questions argued as to the duty of the trustees or of the court to coerce the trustees to perform such duty, are not, in the view we take of appel-

lant's attitude and standing, incumbent upon us to decide on this appeal.

Finally, the chancellor treated Fetzer as *amicus curiæ* and proceeded to hear at length all the proofs supporting averments and sworn statements made by Fetzer, which tended to cast any doubt upon the integrity of the actions of the interested parties and whether the court was being deceived. The chancellor found that none of the charges made by Fetzer were sustained and exonerated all concerned from any taint or suspicion of guilt of the charges made. On the contrary, after such hearings, the court in effect held that all the evidence considered and the relations and interests of all the parties being taken into account, the proposed lease to Rothschild & Company was for the best interests of all the beneficiaries under the trusts, and that in the peculiar situation of the property and the conditions of the original ground leases to Jonathan Clark, that to follow the course pursued by Fetzer might jeopardize and imperil the whole estate held by the trustees and possibly ultimately result in its loss; and that not to sanction the carrying out of such understanding with Rothschild & Company would be violative of honest, upright, fair dealing. The chancellor having disposed of Fetzer's complaints and charges as *amicus curiæ*, his right to remain in the case and further press his charges ceased. We think that the doctrine announced in 9 Enc. P. & L., 725-6, that "An *amicus curiæ* has no control over the suit and no right to institute proceedings therein, nor has he the right to bring the case from one court to another or from a single judge to a full court, by exceptions, appeal or writ of error" is sound law.

The motion to dismiss the appeal of Fetzer is allowed and the appeal is dismissed.

*Appeal dismissed.*